**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

GRIEVANCE ADMINISTRATOR, ATTORNEY
GRIEVANCE COMMISSION, STATE OF
MICHIGAN,

      Petitioner,

v.

GEOFFREY N. FIEGER,

      Respondent.

_____/

CASE NO. 05-72264

HON. MARIANNE O. BATTANI

**OPINION AND ORDER GRANTING PETITIONER'S
<u>MOTION FOR REMAND</u>**

   Before the Court is Petitioner's Motion for Remand (Doc. # 3).  The Court heard oral argument on September 14, 2005.  At the conclusion fo the hearing, the Court took the matter under advisement.  Respondent subsequently filed an Addendum to his Memorandum of Law in Opposition to Petitioner's Motion to Remand and an Affidavit. The Court has reviewed the additional filings.  For the reasons stated below, the Court GRANTS Petitioner's motion and REMANDS this matter to the Michigan Supreme Court.

**I.  FACTS**

   On April 17, 2001, the Petitioner, Grievance Administrator, filed a Formal Complaint with the Attorney Discipline Board, charging Respondent, Geoffrey N. Fieger, with multiple violations of the Michigan Rules of Professional Conduct.  The charges arises out of two radio broadcasts by Fieger in which he attacked the Michigan Court of Appeals panel that overturned a jury verdict Respondent had obtained in a medical malpractice case.  <u>See</u> Notice of Removal, Ex. A.

   On January 31, 2004, a hearing panel of the Attorney Grievance Board ("Board") approved a consent resolution negotiated between the Grievance Administrator and Respondent.  Pet'r's Attach. A.  The consent resolution required Respondent to plead

no contest and to be reprimanded with the understanding that appellate review could be sought regarding the constitutionality of the two Rules of Professional Conduct at issue in the charge.

The Board heard Respondent's challenge on April 15, 2004.  On November 8, 2004, the Board ruled in Respondent's favor and set aside the finding of misconduct and the reprimand.  The Grievance Administrator filed an application for leave to appeal with the Michigan Supreme Court.  Respondent field his response in addition to a motion to recuse four of the seven justices.  On May 27, 2005, Respondent's motion was denied, and the Grievance Administrator's application for leave to appeal was granted.

Respondent filed the Notice of Removal on June 8, 2005. He relies on the civil rights removal statue, 28 U.S.C. § 1443(1), as well as the general removal statue, 28 U.S.C. § 1441(b) as bases for removal.

## II.    STANDARD OF REVIEW

 Federal removal jurisdiction is statutory in nature, and the governing statutes are to be strictly construed.  Shamrock Oil & Gas v. Sheets, 313 U.S. 100, 108-09 (1941).  It is well-settled that the presumption is "against removal jurisdiction." Groesbeck Inv., Inc. v. Smith, 224 F.Supp.2d 1144 (E.D.Mich. 2002).  Therefore, when reviewing a motion to remand, the district court must resolve all doubts in favor of a remand to state court, and the party opposing a remand bears the burden of establishing federal jurisdiction.  Id.

## III.    ANALYSIS

According to Petitioner, Respondent's Notice of Removal is merely "a thinly disguised reprise of legal theories twice rejected by this Court" and "a desperate effort to thwart review of Respondent's attorney discipline appeal by the Michigan Supreme Court."   Pet'r's Brief in Support of Motion to Remand at 2.    Petitioner asks the Court to remand on three grounds: (1) Respondent waived his right to remove; (2) removal was

improper under the civil rights removal statute; and (3) removal was improper under the general removal statute.  The Court addresses each basis below.

### A.  Waiver

It is undisputed that Respondent signed a consent in which he agreed in paragraph 5 to have his "appellate challenge heard and decided by appellate tribunal through the normal appellate process. . . ."  The parties dispute the meaning of the phrase "normal appellate process."

According to Petitioner, the normal appellate process for attorney discipline matters is set forth in MCR 9.122, which provides that any party aggrieved by the Board's decision can apply for leave to the Michigan Supreme Court.  Therefore, Petitioner concludes that Respondent knew when he signed the stipulation that the Michigan Supreme Court might review this matter.  In addition, Respondent knew of the conduct constituting "bias" when he signed the stipulation.  Hence, his waiver was knowing and voluntary.

Respondent raises several arguments in response, including that the waiver of the right to remove must be clear and unequivocal, and the language cited is not.  The Court agrees that the facts here do not satisfy the standard that must be met.

Although the right to remove can be waived, the case law makes it clear that such waiver must be clear and unequivocal.  Regis Assoc. v. Rank Hotels (Management) Ltd., 894 F.2d 193, 195 (6th Cir. 1990) (citing Kiddie Rides U.S.A., Inc. v. Elektro-Mobiltechnik GMBH, 579 F.Supp. 1476 (C.D.Ill. 1984); Capital Bank & Trust Co. v. Associated Int'l Ins. Co., 576 F.Supp. 1522 (M.D.La. 1984).  A party may waive the right to remove to federal court "where, after it is apparent that the case is removable, the defendant takes actions in state court that manifest his or her intent to have the matter adjudicated there, and to abandon his or her right to a federal forum."  See Baldwin v. Perdue, Inc., 451 F.Supp. 373, 375-76 (E.D.Va. 1978); George v. Al-Saud,

478 F.Supp. 773, 774 (N.D.Cal. 1979).

The fact that removal may be atypical does not satisfy the waiver standard. Case law requires that waiver be clear and unequivocal. Petitioner's argument that the "normal appellate process" could not have encompassed removal to a federal trial court falls far short of showing that Respondent waived his right to remove, assuming such a right exists. Therefore, the Court finds that Respondent has not waived his right and directs its attention to the issue of whether 28 U.S.C. § 1443(1) provides a basis for Respondent to remove the proceedings to federal court.

**B. Civil Rights Removal Statute**

The parties contest whether Respondent can satisfy the criteria for removal under the Civil Rights Removal Statute. Title 28 U.S.C. § 1443(1), authorizes the removal of a state law action: "[a]gainst any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof."

In State of Georgia v. Rachel, 384 U.S. 780 (1966), the Supreme Court established the boundaries of this removal provision, articulating the precise circumstances required to sustain removal under § 1443(1). In Rachel, twenty African-American individuals were prosecuted in state court for criminal trespass violations, which resulted from their attempts to obtain service at a privately-owned restaurant in Atlanta, Georgia. Because federal law required such a restaurant to serve persons of all races, the arrested individuals sought to remove the state court prosecutions to federal court on the basis of 28 U.S.C. § 1443(1). The Court found the removal proper after determining first that "the phrase 'any law providing for ... equal civil rights' must be construed to mean any law providing for specific civil rights stated in terms of racial equality." Id. at 792. The Court concluded that the statute invoked by the removing defendants, the Civil Rights Act of 1964, was a statute providing for equal civil

4

rights.

The Court then addressed the second statutory requirement--that the state court defendant be "denied or cannot enforce" his or her rights in state court. The Court observed that in order to sustain pre-trial removal, denial of rights traditionally had been required to be so manifest in a *formal expression of state law* that "it could be taken as suitable indication that all courts in that State would disregard the federal right of equality with which the state enactment was precisely in conflict." Id. at 804 (citations omitted. The Court explained that, given the particular circumstances of that case before it, a firm prediction that the defendants would be denied federal rights in the state court might be made even in the absence of a discriminatory state enactment.

The Court immediately highlighted the limited nature of removal under the statute in City of Greenwood v. Peacock, 384 U.S. 808 (1966), a case decided on the same day as Rachel. In Peacock, twenty-nine people were prosecuted as a result of First Amendment petitioning activity. The Mississippi state court defendants sought removal under § 1443(1). The Peacock Court began its analysis of § 1443(1) removability by noting the unique circumstances present in Rachel, and delineating two significant differences between Peacock and Rachel: First, "no federal law confers an absolute right on private citizens ... to obstruct a public street, to contribute to the delinquency of a minor, to drive an automobile without a license, or to bite a policeman"; and, second, "no federal law confers immunity from state prosecution on such charges." Id. at 826-27.

Accordingly, the two pivotal issues in this removal are:   whether the right allegedly denied the Respondent arises under federal law providing for specific "civil rights stated in terms of racial equality;" and, whether the Respondent is "denied or cannot enforce specified federal rights in state court."  Petitioner contends that removal is defective because Respondent cannot satisfy either prong.  First, he is seeking to

5

vindicate his First Amendment rights in the disciplinary appeal, not civil rights implicating racial equality. Second, Respondent is not being denied the opportunity to raise his constitutional challenge in the disciplinary appeal; he simply thinks that he will not prevail. Respondent argues that he is a person within the class of person intended to be protected by 28 U.S.C. § 1443, because he has championed the civil rights of minorities. Further, he asserts that cannot enforce his rights in state court, as reflected by the public comments of four of the justices of the Michigan Supreme Court and their failure to recuse themselves from this matter.

### 1. Does the right implicate racial equality?

Here, Respondent asserts that he is proceeding under the Civil Rights Act of 1870, codified as 42 U.S.C. § 1981, which reads, in relevant part, as follows:

> Equal rights under the law.
>
> (a) Statement of equal rights:  All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, **to sue**, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(Emphasis added).

Although Respondent has cited a civil rights statute that might support removal under the first prong of Rachel, his reliance is misplaced. Respondent simply has not alleged, nor can he show, that he suffered a deprivation of equal rights because of his race.

In the alternative, Respondent maintains that because he has protested the deprivation of equal rights and is a champion of victims, he is protected by the statute. Several federal courts have determined that such allegations are sufficient to state a claim for relief under section 1981. See, e .g., Johnson v. University of Cincinnati, 215 F.3d 561 (6th Cir.) (an employee may claim protected status under section 1981 for

6

advocacy of minorities even if the employee is not a member of a recognized protected group), cert. denied, 531 U.S. 1052 (2000); Skinner v. Total Petroleum, Inc., 859 F.2d 1439 (10th Cir.1988) (a white employee who was not fired because of his race, but who claimed that he was fired because he assisted an African-American co-employee with the co-employee's EEOC claim, could maintain a section 1981 action against his former employer); Winston v. Lear-Siegler, Inc., 558 F.2d 1266 (6th Cir.1977) (a white plaintiff has standing to sue his former employer under section 1981 for discharging him in alleged retaliation for protesting the alleged discriminatory firing of an African-American co-employee); DeMatteis v. Eastman Kodak Co., 511 F.2d 306 (2d Cir.1975) (a white employee has standing under section 1981 to sue his former employer for allegedly forcing him into premature retirement because he sold his house in a neighborhood inhabited primarily by white employees to an African-American fellow employee). Although Respondent is correct that § 1981 has provided protected status to non-minorities, the facts here do not support Respondent's reliance on it as a basis for removal.

According to Respondent, he "has been a vociferous advocate of the civil rights of the African-American population in Metropolitan Detroit, perhaps most notoriously, in his defense of Nate Abraham."  Resp.'s Brief at 21.  He adds that his defense of Abraham generated "a flood of hate mail."  Id.  Respondent then concludes that he has been "embroiled in so many "hot button public controversies, that any multiple-motive requirement is plainly fulfilled."  Resp.'s Brief at 22.  The additional filings submitted by Respondent include his public service announcements on behalf of Highland Park Schools which, he claims, show his identify with and advocacy for the African-American Community.

The Court rejects Respondent's argument.  Case law interpreting the language of the civil rights removal provision has made clear that Congress has crafted only a

narrow exception to the rule that a state court action may be removed to a federal district court only if federal jurisdiction is evident on the face of the plaintiff's well-pleaded complaint.  The exception is not satisfied here.  The attorney discipline procedure arises out of comments Respondent made after the appellate court panel vacated a $15 million jury award on a medical malpractice case.  It in no way implicates minority civil rights.  Further, Respondent's application for leave to appeal explicitly raised First Amendment issues, and the Board's decision which is the subject of the appeal deals with that issue.  In sum, the facts giving rise to this case do not provide the requisite link to the racial equality requirement.

Finally, the Court observes that, if it were to credit Respondent's argument, once a party had engaged in some conduct implicating protection of civil rights, any subsequent litigation--regardless of the nature--could be removed under the civil rights removal statute.  That in no way meets the narrow criteria articulated by the Supreme Court.  In sum, he cannot meet the first prong of the <u>Rachel</u> test.

### 2.  Can right be enforced in state court?

Under the second prong of the <u>Rachel</u> test, Respondent must show that "it can be predicted by reference to a law of general application that the defendant will be denied or cannot enforce the specified federal rights in the state courts."  <u>Id.</u> at 804.  In this case, Respondent relies on the Michigan Court Rules governing disqualification to meet his burden.

Rule 2003 reads, in relevant part,:

A judge is disqualified when the judge cannot impartially hear a case, including but not limited to instances in which:

(1) The judge is personally biased or prejudiced for or against a party or attorney.

(2) The judge has personal knowledge of disputed evidentiary facts concerning the proceeding.

8

The Rules further provide that when the motion is denied,

> (a) in a court having two or more judges, on the request of a party, the challenged judge shall refer the motion to the chief judge, who shall decide the motion de novo;
> (b) in a single-judge court, or if the challenged judge is the chief judge, on the request of a party, the challenged judge shall refer the motion to the state court administrator for assignment to another judge, who shall decide the motion de novo.

> (4) Motion Granted. When a judge is disqualified, the action must be assigned to another judge of the same court, or, if one is not available, the state court administrator shall assign another judge.

Respondent's contention is that despite the clear meaning of the Rule, the justices of the Michigan Supreme Court have failed to apply the rules. Even if Respondent is correct that he has a right to require the justices to follow the recusal procedure outlined in MCR 2.003, the Michigan rule governing disqualification of judges in no way conflicts with an absolute right conferred by federal law. Noncompliance with the recusal procedure cannot be equated with a denial of Respondent's opportunity to present his constitutional challenge to the misconduct charges. Finally, Respondent's prediction that he will not receive consideration by fair and impartial judges is insufficient to satisfy the second prong of Rachel. As noted in Davis v. Glanton, 107 F.3d 1044, 1047-1048 (1997),

> It is not enough to support removal under § 1443(1) to allege or show that Respondent "is unable to obtain a fair trial in a particular state court. The motives of the officers bringing the charges may be corrupt, but that does not show that the state trial court will find the defendant guilty if he is innocent, or that in any other manner the defendant will be "denied or cannot enforce in the courts" of the State any right under a federal law providing for equal civil rights. The civil rights removal statute does not require and does not permit the judges of the federal courts to put their brethren of the state judiciary on trial. Under § 1443(1), the vindication of the defendant's federal rights is left to the state courts except in the rare situations where it can be clearly predicted by reason of the operation of a pervasive and explicit state or federal law that those rights will inevitably be denied by the very act of bringing the defendant to trial in the state court.

Accordingly, the Court finds that Respondent has failed to show removal is appropriate

9

under the civil rights removal statute.

### C.    Removal under general removal provision

Petitioner advances several arguments in support of its position that removal is improper under this provision.  The Court limits its discussion to the issue of whether it has original jurisdiction over the matter.  Petitioner asserts that this matter is not founded on a claim or right arising under the Constitution, treaties or laws of the United States, inasmuch as attorney disciplinary proceedings are brought to vindicate the state's interest in maintaining and assuring professional conduct of the attorneys its licenses.  Middlesex Co. Ethics Comm v. Garden State Bar Assoc., 457 U.S. 423 (1982).  Respondent contends that the question of whether the Attorney Discipline Board has the power to declare Michigan Rules of Professional Conduct unconstitutional is a claim that already has been raised in this Court.  See Feiger v. Thomas, 872 F.Supp. 377 (E.D.Mich. 1994), rev'd, 74 F.3d 740 (6th Cir. 1996).

A defendant may remove a state law claim to federal court when the federal court would have had original jurisdiction, if the suit originally had been filed there. See 28 U.S.C. § 1441(b). Federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In determining whether a complaint arises under federal law, courts apply the "well-pleaded complaint" rule. Loftis v. United Parcel Serv., Inc., 342 F.3d 509, 514 (6th Cir. 2003). Under this rule, the court examines the 'well pleaded' allegations of the complaint and ignores potential defenses." Beneficial Nat'l Bank v. Andersen, 539 U.S. 1, 6 (2003).  "[F]ederal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar v. Williams, 482 U.S. 386, 392 (1987).

The well-pleaded complaint rule recognizes that the plaintiff is the master of his complaint. Loftis, 342 F.3d at 515.  Accordingly, if the plaintiff chooses to bring a state

10

law claim, that claim cannot generally be "recharacterized" as a federal claim for the purpose of removal.  Id. (citing Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987)). It is settled law that "a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." Caterpillar, 482 U.S. at 393. See also Beneficial Nat'l Bank, 539 U.S. at 6 ("[A] defense that relies on. . .the pre-emptive effect of a federal statute will not provide a basis for removal.");  Metro. Life Ins. Co., 481 U.S. at 63-64 ("Federal pre-emption is ordinarily a federal defense to the plaintiff's suit.  As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court.").

Respondent cannot meet his burden to show removal is proper.  Although Respondent is correct--he could bring suit against the grievance administrator in this Court provided he was making a challenge based upon the Constitution or federal laws--that is not what happened here.  The Formal Complaint in this case alleges professional misconduct in violation of the Michigan Rules of Professional Conduct.  It is Respondent who brings a constitutional defense into play.  The law is well settled:  A federal defense provides no basis for removal.

**V.      CONCLUSION**

For the reasons discussed above, Petitioner's Motion for Remand is GRANTED.

IT IS FURTHER ORDERED that this matter is REMANDED to the Michigan Supreme Court.  In light of the Court's finding that this matter is not properly before it, it declines to rule on Petitioner's Motion for Protective Order.

IT IS SO ORDERED.


s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

Dated: October 19, 2005


## CERTIFICATE OF SERVICE

Copies of this Order served upon  Robert E. Edick and Richard L. Steinberg on this date by electronic filing and/or ordinary mail.


s/Bernadette M. Thebolt
Deputy Clerk

12